UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GAIL UHING and FRANCIS UHING, | CIV. 08-4200 |
| Plaintiff, | |
| | OPINION AND ORDER |
| -vs- | |
| ROBERT A. CALLAHAN, M.D., | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Plaintiffs' Motion to Compel Yankton Medical Clinic to comply with Plaintiffs' Deposition Subpoena Duces Tecum and to award reasonable attorneys' fees and expenses incurred with bringing the Motion (Doc. 50). Plaintiffs identified the disputed documents by referring to correspondence from counsel for Yankton Clinic in which the documents are identified. The letter is dated October 22, 2009 (Doc. 51-3). The disputed documents are:

> The general nature of the documents that were not produced on the ground that they fall within the scope of SDCL 36-4-26.1 is set forth below.
>
> 1. Any minutes of the Quality Management Committee in which any of Dr. Callahan's cases were discussed or referenced;
>
> 2. Any documents regarding Dr. Callahan's conduct, performance, or cases that were forwarded to the Quality Management Committee
>
> 3. Agendas and Minutes of the Yankton Medical Clinic, P.C. Board of Director's Meetings in which Dr. Callahan's employment status, their terms and conditions of his employment, or his conduct or performance as an employee of Yankton Medical Clinic, P.C., were discussed, and notes and memoranda regarding the same;

4. Documents including notes, memos, and email correspondence, regarding discussion or consideration by the Executive Committee or members of the Executive Committee of Yankton Medical Clinic, P.C. of Dr. Callahan's employment status, the terms and conditions of Dr. Callahan's employment, or Dr. Callahan's conduct and performance as an employee of Yankton Medical Clinic, P.C.;

5. Documents, including notes, memos and shareholder ballots, regarding any discussion or consideration by the shareholders of Yankton Medical Clinic, P.C. regarding Dr. Callahan's employment status, the terms and conditions of Dr. Callahan's employment, or Dr. Callahan's conduct and performance as an employee of Yankton Medical Clinic, P.C.

6. Documents reflecting information the Recruiting Committee, Executive Committee, Board of Directors, and shareholders reviewed and considered regarding Dr. Callahan's qualifications, competency, character, or experience before Yankton Medical Clinic, P.C., offered him an employment contract. These documents include information received from the National Practitioner Data Bank and professional reference checks.

7. Documents reflecting information that was provided to the South Dakota State Medical Association and the South Dakota Board of Medical and Osteopathic Examiners in connection with Dr. Callahan's applications.

8. Documents regarding Dr. Callahan's application for insurance with MMIC.

9. Documents reflecting information Yankton Medical Clinic, P.C. provided to health care facilities and state licensing bodies in response to requests for information in connection with Dr. Callahan's application for privileges and/or licenses.

10. Documents regarding Dr. Callahan's application for privileges to practice at Avera Sacred Heart Hospital.

**Plaintiffs' Argument.**

"Under applicable South Dakota law, peer review privilege applies only to information submitted to a 'peer review committee,' and the information which YMC refused to produce in compliance with the Deposition Subpoena Duces Tecum was not submitted to such committee." Plaintiffs cite a Nebraska case in which the Nebraska Supreme Court distinguished between factual information to which the privilege does not apply and reports or recommendations from peer review committees which are protected. *State ex rel. AMISUB, Inc. v. Buckley*, 618 N.W.2d 684, 696-97, (Neb. 2000). Plaintiffs argue the Clinic carries the burden to prove the withheld documents are protected by the privilege, but that it has not met the criteria established in *Corrigan* to demonstrate the withheld information is protected by peer privilege. *Corrigan v. Methodist Hospital*, 857 F.Supp. 434, (E.D.Penn. 1994). Application of the privilege must be considered on a document-by-document and case-by-case basis. *Call v. Chambers and McLaren Regional Medical Center*, 2001 WL 740588 (Mich.App.2001). Plaintiffs argue they need the disputed records because Dr. Callahan attributes errors in Plaintiff's back surgery to inexperienced staff. Plaintiffs argue that Dr. Callahan's medical history suggests he should not have been performing surgeries. The disputed records could provide evidence to refute Dr. Callahan's assertion that he is physically capable of performing surgery. Plaintiffs argue there is good cause to order the documents produced as contemplated by *Giebink v. Giebink*, 2009 WL 1350805 (D.S.D. 2009).

In response to briefs filed by Defendant and Yankton Medical Clinic, Plaintiffs assert *Pawlovich* stands for the rule that the peer privilege does not apply to all medical employment relationships. *Pawlovich v. Linke*, 2004 SD 109, 688 N.W.2d 218 (S.D. 2004). Plaintiffs argue *Pawlovich* stands for the proposition that the peer review privilege is only absolute when the committee is acting in a quasi judicial proceeding or legislative proceeding:

3

> Thus, *Pawlovich* clearly demonstrates that South Dakota's peer review protection does not extend to all communications and information generated by complaints from or about medical staff, and that even hiring and firing decisions regarding medical personnel are not per se protected from discovery as "peer review."

Plaintiff's reply brief, Doc. 60, p. 5. Plaintiffs further argue:

> In direct contrast to YMC's argument, the Pawlovich court made clear that the mere gathering of information, conducting of investigations, or even dismissals of the medical professionals is not deemed to be "peer review" activity, unless conducted by a duly–designated peer review committee. Pawlovich, ¶ 14.

*Id.* at 6. Plaintiffs assert:

> Plaintiffs seek only the designated information that YMC had before it was allegedly submitted to any committees for review.

*Id.* at 10.

**Yankton Medical Clinic's Argument.**

Federal Rule of Evidence 501 provides questions of privilege are to be decided under state law. The disputed documents fall squarely within the protection of South Dakota's peer review privilege, SDCL § 36-4-26.1. The peer review privilege is absolute. *Pawlovich v. Linke,* 2004 SD 109, 688 N.W.2d 218, 223 (S.D. 2004). The peer review privilege is broad. SDCL § 36-4-42. One or more persons acting as any committee for a group medical practice or any other organization of physicians formed under state or federal law (among other statutorily defined entities) that engages in peer review activity are protected by the privilege. Under SDCL § 36-4-26.1 all records, reports, statements, minutes or any other data whatsoever are protected from disclosure. Even matters relevant to the claim of an injured party cannot be disclosed if they are protected under the peer review privilege.

4

**Defendant's Argument.**

Defendant relies on the peer review privilege to oppose the production of the disputed documents. Defendant asserts the relevancy of the disputed documents is not relevant— the peer review privilege protects from discovery even relevant documents.

## ANALYSIS

The peer review privilege statute provides:

**36-4-26.1. Proceedings of peer review committees confidential and privileged--Availability to physician subject of proceedings**

The proceedings, records, reports, statements, minutes, or any other data whatsoever, of any committee described in § 36-4-42, relating to peer review activities defined in § 36-4-43, are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum, except as hereinafter provided. No person in attendance at any meeting of any committee described in § 36-4-42 is required to testify as to what transpired at such meeting. The prohibition relating to discovery of evidence does not apply to deny a physician access to or use of information upon which a decision regarding the person's staff privileges or employment was based. The prohibition relating to discovery of evidence does not apply to deny any person or the person's counsel in the defense of an action against that person access to the materials covered under this section.

This peer review privilege precludes discovery of documents or any other data whatsoever generated by any peer review committee engaging in peer review activities. A peer review committee can be one person or more persons, so long as the person or persons fit into one of the categories listed in § 36-4-42. One of the listed categories is group medical practice. The Yankton Medical Clinic is a group practice of thirty five physicians. Another listed category is health care facility. Avera Sacred Heart Hospital is a health care facility in Yankton, South Dakota.

5

Six peer review activities are described in § 36-4-43:

**36-4-43. Peer review activities defined**

For the purposes of §§ 36-4-25, 36-4-26.1 and 36-4-42, peer review activity is the procedure by which peer review committees monitor, evaluate, and recommend actions to improve the delivery and quality of services within their respective facilities, agencies, and professions, including recommendations, consideration of recommendations, actions with regard to recommendations, and implementation of actions. Peer review activity and acts or proceedings undertaken or performed within the scope of the functions of a peer review committee include:

(1) Matters affecting membership of a health professional on the staff of a health care facility or agency;

(2) The grant, delineation, renewal, denial, modification, limitation, or suspension of clinical privileges to provide health care services at a licensed health care facility;

(3) Matters affecting employment and terms of employment of a health professional by a health maintenance organization, preferred provider organization, independent practice association, or any other organization of physicians formed pursuant to state or federal law;

(4) Matters affecting the membership and terms of membership in a health professional association, including decisions to suspend membership privileges, expel from membership, reprimand, or censure a member, or other disciplinary actions;

(5) Review and evaluation of qualifications, competency, character, experience, activities, conduct, or performance of any health professional, including the medical residents of health care facility; and

(6) Review of the quality, type, or necessity of services provided by one or more health professionals or medical residents, individually or as a statistically significant group, or both.

The following conclusions are reached by comparing the descriptions of the withheld, disputed documents (from counsel's October 22 letter, Doc. 51-3) to the definitions of peer review committee (SDCL § 36-4-42) and peer review activities (SDCL 36-4-43).

1. **Minutes about discussion of patients.**

The subjects of item 1 are minutes of the Quality Management Committee in which any of Dr. Callahan's patients were discussed. The patient medical privilege aside, the pertinent portions of the peer review privilege (SDCL 36-4-26.1) provide protection for a peer review committee (defined in SDCL 36-4-42) performing the following peer activities (defined in (SDCL 36-4-43):

> (5) Review and evaluation of qualifications, competency, character, experience, activities, conduct, or performance of any health professional, including the medical residents of health care facility; and
>
> (6) Review of the quality, type, or necessity of services provided by one or more health professionals or medical residents, individually or as a statistically significant group, or both.

SDCL 36-4-43(5) & (6).

By title the Quality Management Committee of the Yankton Medical Clinic is a peer review committee. The Quality Management Committee is engaged in a peer review activity described in SDCL 36-4-43(5) & (6) when it considers treatment rendered by Dr. Callahan to his patients. The withheld, disputed documents are minutes of those meetings. This is a peer review committee performing peer review activities. The plain meaning of SDCL 36-4-26.1 is that these minutes are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 1 of the October 22 letter is DENIED.

2. **Documents reviewed by Quality Management Committee about Dr. Callahan.**

The same reasoning about item 1 applies to documents regarding Dr. Callahan's conduct, performance, or cases that were forwarded to the Quality Management Committee. Plaintiffs' motion to compel production of the documents referenced in item 2 of the October 22 letter is DENIED.

3. **Documents of the Yankton Medical Clinic or Clinic Board of Director's Meetings in which Dr. Callahan's employment status or performance were discussed.**

The subjects of item 3 are the withheld, disputed agendas, minutes, notes and memoranda of Yankton Medical Clinic Board of Director's meetings in which Dr. Callahan's employment status, the terms and conditions of his employment, or his conduct or performance as an employee of Yankton Medical Clinic were discussed. Subsections (3), (5), and (6) of SDCL 36-4-43 describe this activity. The board of directors of an independent medical practice (SDCL 36-4-42) is a peer review committee when it reviews matters affecting employment and terms of employment of a doctor— § 36-4-43(3); when it reviews and evaluates qualifications, competency, character, experience, activities, conduct, or performance of a doctor— § 36-4-43(5); and when it reviews of the quality of services provided by a doctor— § 36-4-43(6). The plain meaning of SDCL 36-4-26.1 is that these documents are privileged under 36-4-43(3), (5) & (6) and are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 3 of the October 22 letter is DENIED.

4. **Documents of the Executive Committee of Yankton Medical Clinic, in which Dr. Callahan's employment status or performance were discussed.**

The subjects of item 4 are the withheld, disputed documents including notes, memos, and email correspondence discussed or considered by the Executive Committee or members of it about Dr. Callahan's employment status, the terms and conditions of his employment, or his conduct and performance as an employee. The same reasoning applies as in item 3. The plain meaning of SDCL 36-4-26.1 is that these documents are privileged under 36-4-43(3), (5) & (6) and are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as

8

evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 4 of the October 22 letter is DENIED.

5. **Documents in which Dr. Callahan's employment status or performance were discussed by the shareholders of Yankton Medical Clinic.**

The subjects of item 5 are the withheld, disputed documents, including notes, memos, and shareholder ballots regarding discussion or consideration by the shareholders of Yankton Medical Clinic about Dr. Callahan's employment status, the terms and conditions of his employment, or his conduct and performance as an employee. The same reasoning applies as in item 3. The plain meaning of SDCL 36-4-26.1 is that these documents are privileged under 36-4-43(3), (5) & (6) and are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 5 of the October 22 letter is DENIED.

6. **Documents reviewed by the Recruiting Committee, Executive Committee, Board of Directors, and shareholders considered about Dr. Callahan's qualifications, competency, character, or experience before an employment contract was offered to Dr. Callahan.**

The subjects of item 6 are documents reviewed by the Recruiting Committee, Executive Committee, Board of Directors, and shareholders about Dr. Callahan's qualifications, competency, character, or experience before Yankton Medical Clinic offered him an employment contract. The identified groups are acting as a peer review committee when they review matters affecting employment and terms of employment of a doctor in behalf of an independent practice association or any other organization of physicians formed pursuant to state or federal law— § 36-4-43(3); and when they review and evaluate the qualifications, competency, character, experience, activities,

conduct, or performance of any health professional, including the medical residents of health care facility— § 36-4-43(5). The plain meaning of SDCL 36-4-26.1 is that documents reviewed by Yankton Medical Clinic about Dr. Callahan before it offered employment to him are privileged under SDCL 36-4-43(3) & (5) and are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 6 of the October 22 letter is DENIED.

7. **Documents with information provided to the South Dakota State Medical Association and the South Dakota Board of Medical and Osteopathic Examiners in connection with Dr. Callahan's applications.**

Under SDCL 36-4-43, in pertinent part, peer review activity is the procedure by which peer review committees monitor, evaluate, and recommend actions to improve the delivery and quality of services within their respective professions. In this circumstance the information considered by the South Dakota Board of Medical and Osteopathic Examiners in connection with Dr. Callahan's application to practice medicine in South Dakota necessarily constitutes an evaluation of him to determine whether he should receive a license to practice medicine in South Dakota. SDCL 36-4-11. When the Board of Medical and Osteopathic Examiners considers an application to practice medicine it is a peer review committee as defined in SDCL 36-4-42 performing a peer review activity defined in SDCL 36-4-43(5). The plain meaning of SDCL 36-4-26.1 is that these documents submitted to the Board of Medical and Osteopathic Examiners so that it can decide to grant or deny a license to practice medicine are privileged under SDCL 36-4-43(5)and are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence

in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 7 of the October 22 letter is DENIED.

### 8. Documents regarding Dr. Callahan's application for insurance.

The subject of item 8 is information about Dr. Callahan submitted in connection with application for insurance. The insurer reviews that information. The insurer does not review that information for any purpose described in SDCL 36-4-43. Information submitted to an insurer in connection with an application for insurance is not privileged under SDCL § 36-4-26.1, § 36-4-42, and § 36-4-43. Plaintiffs' motion to compel production of the documents referenced in item 8 of the October 22 letter is GRANTED.

### 9. Documents with information provided to health care facilities and state licensing bodies in connection with Dr. Callahan's application for privileges and/or licenses.

Under SDCL 36-4-43(1), (2) & (5) matters affecting membership of a health professional on the staff of a health care facility; and the grant, delineation, renewal, denial, modification, limitation, or suspension of clinical privileges to provide health care services at a licensed health care facility; and the review and evaluation of qualifications of a health professional are peer review activities. A South Dakota health care facility and a South Dakota licensing body are a peer review committee as defined in SDCL 36-4-42 when it performs the functions described as peer review activities, i.e. SDCL 36-4-43(1), (2) & (5). The plain meaning of SDCL 36-4-26.1, SDCL 36-4-43(2) & (5) is that review and evaluation of the qualifications of a doctor or medical resident to be licensed to practice in South Dakota (subsection 5) or to receive privileges at a health care facility (subsections (1) &( 2)) is not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and

are not admissible as evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 9 of the October 22 letter is DENIED..

**10. Documents in connection with Dr. Callahan's application for privileges to practice at Avera Sacred Heart Hospital.**

The same reasoning about health care facilities applies as in item 9. The plain meaning of SDCL 36-4-26.1, SDCL 36-4-43(1) & (2) is that review and evaluation of the qualifications of a doctor or medical resident to receive privileges at a health care facility is not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum. Plaintiffs' motion to compel production of the minutes referenced in item 10 of the October 22 letter is DENIED.

### Cases Cited By Plaintiffs.

Plaintiffs cited *Giebink* to support the proposition that there is good cause for the discovery of the disputed documents despite the peer review privilege. *Giebink v. Giebink*, 2009 WL 1350805 (D.S.D. 2009). *Giebink* does not address the medical peer review privilege and does not control the outcome of this case:

> Beneficiaries' motion to compel discovery of certain documents was granted in beneficiaries' breach of fiduciary duty claim against trustee. Beneficiaries alleged that trustee had refused beneficiaries' requests for documentation of the governing instruments of the trusts, an accounting, and financial information regarding the trust assets and transactions that have occurred in the trusts since their creation.

Relevancy and good cause are trumped by the absolute peer review privilege of SDCL 36-4-26.1 with respect to documents which fall within the umbrella of the peer review privilege.

Plaintiffs also cite *Pawlovich* for the proposition that the peer review privilege does not apply unless the persons engaged in the peer review activity are acting as a formal peer review committee.

*Pawlovich v. Linke*, 2004 SD 109, 688 N.W.2d 218 (S.D. 2004). The South Dakota Supreme Court said :

> It is significant that the investigation concerning the alleged disclosure was handled by Feterl and Stahl and was not a peer review hearing. . . . However, in this situation the complaint was not made to a body charged with the professional licensing of nurses, nor even [the hospital] disciplinary board.

*Id.* at 223. This holding was made in the context of a defamation case in which plaintiff was fired for breaching patient confidentiality. Plaintiff's supervisor and the hospital's director of human services conducted an investigation, after which plaintiff was fired. Plaintiff sued defendant for defamation based on statements defendant made to the investigators during the investigation. The trial court awarded summary judgment to defendant, holding that SDCL 20-11-5(2), the official proceeding privilege statute, protected defendant from liability because defendant's communication was made to the hospital investigators during the investigation. SDCL 20-11-5(2) provides a privileged communication is made:

> (2) In any legislative or judicial proceeding, or in any other official proceeding authorized by law;

The South Dakota Supreme Court reversed, finding the investigation was not a legislative proceeding, was not a quasi judicial proceeding, nor was it "any other official proceeding authorized by law." SDCL § 36-4-26.1, § 36-4-42, and § 36-4-43 were not the centerpieces of the lawsuit. The court said:

> We agree that public policy justifies an absolute privilege in the context of official quasi-judicial proceedings as well as statutorily authorized professional peer review, however, we decline to extend that privilege to all employment relationships. Although we recognize the position of trust held by a registered nurse, an absolute privilege *under 20-11-5(2)* is not available outside an official proceeding authorized by law. Therefore, the trial court's grant of summary judgment on this issue is reversed. (emphasis added).

13

*Id.* at 224. The peer review privilege created under SDCL § 36-4-26.1, § 36-4-42, and § 36-4-43 was not directly confronted in *Pawlovich*. In the case at hand, SDCL § 36-4-26.1, § 36-4-42, and § 36-4-43 are the centerpieces of the dispute. The plain language of these statutes drives the conclusions reached.

## ORDER

Based on the foregoing, it is hereby

ORDERED that Plaintiffs' Motion to Compel (Doc. 50) is GRANTED in part and DENIED in part. The motion is DENIED as to items 1, 2, 3, 4, 5, 6, 7, 9, and 10 described in the letter from counsel for Yankton Medical Clinic dated October 22, 2009, a copy of which is attached to this Opinion and Order. The motion is GRANTED as to item 8.

Dated this 4 day of January, 2010.

BY THE COURT:

John E. Simko
United States Magistrate Judge